**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**
      **Plaintiff,**

**vs.**                              **CASE NO.:   3:09cv505/MCR/MD**

**DEONNE DUBARRY, et al.,**
      **Defendants.**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon motions for summary judgment, supporting memoranda, and statements of fact filed by plaintiff United States of America ("United States") (doc. 47) and defendant Deonne DuBarry ("DuBarry") (docs. 58, 59).  While both motions aver that there are no genuine issues of material fact and the filing party is entitled to judgment as a matter of law, DuBarry's response to United States' motion states there are clear issues of fact to be decided that preclude summary judgment (doc. 71).  United States contends that DuBarry's motion is untimely and without merit (doc. 66).

Plaintiff United States' motion for summary judgment should be granted (doc. 47).  Defendant Dubarry's motion for summary judgment should be denied as without merit (doc. 58).

### Procedural History

United States instituted this action on November 10, 2009, to foreclose a 2005 tax lien against Dubarry's primary residence, 4610 Paradise Isles, Destin, Florida 32541 ("subject property") (doc. 1).    United States imposed the lien to collect Dubarry's 1994 income tax deficiency (doc. 1 ¶¶12, 14, 19).  United States joined

Daniel E. Becnel, III ("Becnel"), Bank of America, N.A. ("BOA"), Sessions Fishman Nathan & Israel, LLP ("SFNI"), and Fred and Laraine Bertani ("the Bertanis") as defendants with potential interests in the subject property (doc. 1 ¶ 5-9).

On April 28, 2010, this court ordered final judgment against SFNI for failure to appear, answer, plead, or otherwise defend this action (docs. 26, 36). By order, SFNI cannot prevent foreclosure or sale of the subject property. Furthermore, the property may be sold free of any SFNI lien, and SFNI is not entitled to any sale proceeds (doc. 36).

By stipulated agreement, BOA holds a valid mortgage that is superior to United States' tax lien and the other defendants' interests (doc. 43). The parties further agreed that if the court ordered an involuntary sale of the subject property, the proceeds would be applied first to reimburse United States' costs of the sale, second to satisfy BOA's mortgage interest, and the remainder to be distributed as the court determines (doc. 43).

United States filed a motion for summary judgment on September 13, 2010 (doc. 47). Becnel responded in opposition on October 22, 2010 (doc. 53). Dubarry responded in opposition on December 7, 2010 (doc. 64). She also submitted a second response on January 6, 2011 with an attachment (doc. 71).

Dubarry filed a motion for summary judgment on December 7, 2010 (doc. 58). United States responded in opposition on December 27, 2010 (doc. 66). Dubarry then filed a second motion for summary judgment on January 5, 2011 (doc. 69). The court denied the motion without prejudice because Dubarry failed to include a statement of material facts as required by N.D. Fla. Loc. R. 56.1(A) (doc. 70). Furthermore, the issues in the second motion were the same as those raised in Dubarry's first motion for summary judgment, which was properly filed (doc. 70).

The Bertanis have not responded to the motions or filed any pleadings since their motion for excusal from mediation, which this court granted (docs. 44, 45).

<u>Factual History</u>

On July 31, 1995, Dubarry filed her Form 1040 federal income tax return for tax year 1994 (doc. 47-1 ¶ 3). She reported a tax liability of $18,026 and made two estimated payments (doc. 1 ¶ 11; doc. 47-1 ¶ 3). In 1995, she received a $31,974

refund (doc. 1 ¶ 11). In 1997, the Internal Revenue Service ("IRS") issued a notice of deficiency in the amount of $183,171 for Dubarry's 1994 income tax liability (docs. 1 ¶ 12; 47-1 ¶ 4). Although Dubarry challenged the deficiency in the United States Tax Court, she entered into a stipulated agreement on February 10, 2000, to pay the amount noticed (doc. 47-1 ¶ 4).

On March 24, 2000, the Secretary of the Treasury assessed $278,549.39: a tax deficiency of $183,171 and accrued interest of $95,378 (doc. 47-1 ¶ 5).[1] A delegate properly filed a Notice of Federal Tax Lien in Okaloosa County, Florida, on January 19, 2005 (doc. 47-1 ¶ 19). Dubarry has failed to pay the lien, and on November 10, 2009, United States instituted this action to foreclose the tax lien against the subject property (doc. 1).

Dubarry and her son, Becnel, purchased the subject property in 2002 for $520,000 (doc. 47-1 ¶ 7; doc. 53 p. 2). Becnel supplied $150,000 for the down payment, and they financed the remainder of the purchase price through Access Mortgage Corporation (doc. 52 p. 2). Two years later, Dubarry wanted to refinance the property through BOA (doc. 52 p. 2). On August 13, 2004, Becnel executed and recorded a quit-claim deed to Dubarry with the intention of removing himself from any interest or liability in the property (doc. 1 ¶ 16; 47-2 ex. F). At BOA's request, Becnel and Dubarry executed a corrective warranty deed clarifying that the subject property was being transferred from Becnel and Dubarry, as tenants in common, to Dubarry, individually (doc. 1 ¶ 17, 47-2 ex. G). Dubarry then granted a mortgage to BOA for $412,300, which mortgage Becnel co-signed (doc. 47-2 ¶ 14). Although Becnel signed as co-mortgager, he claims he did not realize he would remain liable for the mortgage on the property after ceding his interest to Dubarry (doc. 53 p. 3).

---

[1] The original Notice of Federal Tax Lien, filed on January 19, 2005, correctly lists the assessment amount of $278,549.39 but incorrectly lists two assessment dates (doc. 7 ex. 2). The erroneous date is the date Dubarry filed her income tax return: July 31, 1995 (doc 47-2 ¶ 3). The Secretary of the Treasury re-filed the Notice of Federal Tax Lien on June 30, 2009, correcting date of assessment column but listing the unpaid balance as $277,991.64 (doc. 7 ex. 1). The $557.75 difference is not accounted for in United State's pleadings, but it is noted here as an inconsistency. The original lien amount is consistent with the majority of the information. In any event, erroneously listing two assessment dates while correctly listing the unpaid balance does not render the filing improper. *See United States v. Feinstein*, 717 F.Supp. 1552, 1557 (S.D. Fla. 1989) (federal tax lien is sufficient when a reasonable inspection of public records would have revealed existence of notice).

The corrective deed and mortgage were properly recorded on September 24, 2004 (doc. 1 ¶ 17-18).

Dubarry paid the mortgage on the property from 2004 to early 2006, but her outstanding debts were significantly increasing (doc. 53). First, the Secretary of the Treasury's delegate ("Secretary") filed the Federal Tax Lien in January 2005 (doc. 1 ¶ 19). Then, in April, SNFI recorded a foreign judgment (doc. 1 ¶ 20). To aid Dubarry in paying her mortgage, in early 2006 the Bertanis loaned Dubarry $20,000 (doc. 19; doc. 47-2 ex. I). The Bertanis did not record the loan.

Dubarry filed a Chapter 13 Bankruptcy petition in the United States Bankruptcy Court for the Northern District of Pensacola on May 31, 2005 (doc. 47-3 ex. J). The petition was converted to a Chapter 7 Bankruptcy, and the court discharged Dubarry's personal debts on September 11, 2006 (doc. 47-2 ¶ 19).

In June 2006, while Dubarry's bankruptcy case was pending, BOA notified Becnel that the mortgage was in default (doc. 53 p. 3). Becnel brought the mortgage current and has continued to make payments since that time (doc. 53 p. 3). He estimates he has paid approximately $202,000 to BOA (doc. 53 p. 3).

Dubarry was diagnosed with colon cancer in 2009 (doc. 59 p. 3). She is unable to work in her previous professions as attorney and realtor because of her treatment regimen (doc. 59 p. 3). Dubarry apparently still resides on the subject property. Regardless of her current residence, the subject property is her primary legal residence, as she has lived there at least two years in the five years prior to sale (doc. 59; *see* 26 U.S.C. § 121).

<u>Summary Judgment Standard</u>

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

---

[2] The Supreme Court amended the Federal Rules of Civil Procedure, including Rule 56, on April 28, 2010, and the amendments took effect December 1, 2010. The amended rule does not change the standard for granting summary judgment.

It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  See *id*.; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

On a summary judgment motion, the court must view the record and all reasonable inferences that can be drawn from it in the light most favorable to the non-moving party.  *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  However, conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  *Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983).  "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . .."  *Anderson*, 477 U.S. at 247-48, 106 S. Ct. at 2510.  Summary judgment is appropriate even if "*some* alleged factual dispute" between the parties remains, so long as there is "no *genuine* issue of *material* fact."  *Garczynski v. Bradshaw,* 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (internal quotation and citation omitted)).

Summary judgment is improper if a reasonable fact finder could draw more than one inference from the facts and that inference introduces a genuine issue of material fact.  *United States v. Four Parcels of Real Property in Green and Tuscaloosa Counties in the State of Ala., etc.*, 941 F.2d 1428 (11th Cir. 1991) (citing *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990)).  It is also improper for the district court to assess credibility on a motion for summary judgment because the court's sole function at this stage is to determine whether a genuine issue of fact exists for trial; the court should not weigh evidence or determine its truth.  *Equity Investment Partners, LP v. Lenz*, 594 F.3d 1338, 1345 (11th Cir. 2010); *See Anderson*, 477 U.S. at 55, 106 S. Ct. at 2513 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

In the instant case, the plaintiff, who would have the burden of proof at trial, was the first to move for summary judgment (doc. 47). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence. . .that would entitle it to a directed verdict if not controverted at trial.'" *Four Parcels of Real Property*, 941 F.2d at 1438 (criminal forfeiture context)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2548 (1983)(emphasis in original)). Unless the nonmoving party can rebut the movant by showing "significant, probative evidence" of a triable issue of fact, the court should grant the motion for summary judgment. *Id.*

<u>United States' Motion for Summary Judgment</u>

As stated, United States, as plaintiff, must support its motion with credible evidence that would entitle it to a directed verdict at trial. United States seeks to foreclose a federal tax lien against Dubarry's subject property. It can bring a civil action to recover taxes, fines, and penalties if the Secretary authorizes the proceedings and the Attorney General (or his delegate) "directs that the action be commenced." 26 U.S.C. §§ 7401, 7403(a). In its suit, United States must join "[a]ll persons having liens upon or claiming any interest in the property. . .." 26 U.S.C. § 7403(b).

United States may acquire a lien upon all property, real or personal, of a person who is liable for taxes and neglects to pay it after giving notice and making demand. 26 U.S.C. § 6321. When the Secretary determines a taxpayer did not paid enough income tax, he must send notice of the deficiency for the specified tax year. 26 U.S.C. §§ 6211, 6212. The taxpayer then has ninety (90) days to file a petition for redetermination with the Tax Court. 26 U.S.C. § 6213(a). The Tax Court may increase the amount owed or impose additional tax regardless of the original deficiency amount. 26 U.S.C. § 6214(a). When the Tax Court's decision is final (for example, after affirmation on appeal or stipulated agreement) the entire amount is assessed and subject to collection. 26 U.S.C. §§ 6215(a), 7481.

The lien arises at the time of assessment and continues until it is either satisfied or United States fails to institute a tax collection action within ten (10) years. 26 U.S.C. §§ 6322, 6502(a)(1). Once the lien arises, federal law controls the priority of all liens against the subject property. *Aquilino v. United States*, 363 U.S. 509, 513-14, 80 S. Ct. 1277, 1280, 4 L. Ed. 2d 1365 (1960). A taxpayer's bankruptcy proceeding presents an exception to the ten year rule; it tolls the statute of limitations during its pendency and sixty (60) days thereafter. 26 U.S.C. § 6503(h). However, a bankruptcy discharge extinguishes only *in personam* actions and does not affect United States' ability to bring an *in rem* action. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991); *see* 11 U.S.C. § 524(a)(1) (discharge voids judgments of debtor's personal liability for discharged debts).

The lien is not valid against other creditors until the Secretary properly files a notice of tax lien. 26 U.S.C. § 6323(a). The filing requirement is not surprising because a creditor's priority is generally governed by the rule that "first in time is first in right." *United States By and Through Internal Revenue Service v. McDermott*, 507 U.S. 447, 449, 113 S. Ct. 1526, 1528, 123 L. Ed. 2d 128 (1993). Competing liens exist when they are perfected: when the lienor's identity, property, and debt is established. *Id.* A federal tax lien is unique in that it acquires "first in time" priority regardless of when it actually attaches to identifiable property. *McDermott*, 507 U.S. at 453-54, 113 S. Ct. at 1530. In other words, the lien generally has priority over other creditors with liens against the taxpayer's "after-acquired property." 26 U.S.C. § 6323; *McDermott*, 507 U.S. at 453-54, 113 S. Ct. at 1530. The notice of lien must be filed according to laws of the state of Florida. 26 U.S.C. § 6323(f)(1)(A) (file according to local law). As applied, United States must file the lien in the office of the clerk of the circuit court of the county in which the property is situated. § 713.901(3)(b), Fla. Stat. (2010).

The tax code has long been interpreted to "reach every interest in property that a taxpayer might have. *United States v. Nati'l Bank of Commerce*, 472 U.S. 714, 720, 105 S. Ct. 2919, 2924, 86 L. Ed. 2d 565 (1985) ("Stronger language could hardly have been selected. . ..") (quoting *Glass City Bank v. United States*, 326 U.S. 265,

267, 66 S. Ct. 108, 110, 90 L. Ed 56 (1945)). Section 7403 states that the court *may* order a judicial sale, giving the court some discretion. 26 U.S.C. § 7403; *United States v. Rogers*, 461 U.S. 677, 709, 103 S. Ct. 2132, 2151, 76 L. Ed. 2d 236 (1983). The Supreme Court cautions that this does not equate to unbridled discretion: "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." 461 U.S. at 711, 103 S. Ct. at 2152. Specifically, this discretion should not be used to refuse a sale "simply to protect the interests of the delinquent taxpayer himself or herself." 461 U.S. at 709, 103 S. Ct. at 2151.

With this in mind, United States must make several showings of credible evidence to meet its burden as the party moving for summary judgment. First, it must show Dubarry had a tax deficiency and it notified her of the deficiency. Because Dubarry challenged the deficiency, it must also show the Tax Court's ruling was final. Second, it must present evidence that it made an assessment, giving rise to a lien. Third, to show it perfected the lien, thus establishing priority, United States must present evidence of proper recording under Florida Law. Finally, it must show it commenced the instant action within ten years of the assessment, taking into account the toll on the statute of limitations during Dubarry's bankruptcy proceeding.

## A. United States Presented Credible Evidence to Support Summary Judgment

United States has presented credible evidence to support the facts on which it moves for summary judgment to foreclose its lien. An IRS officer assigned to Dubarry's case submitted a sworn declaration stating that Dubarry challenged the notice of deficiency issued for 1994 (doc. 47-2 ¶ 5). The IRS Account Transcript provides further evidence that United States noticed Dubarry on December 1, 1997 (doc. 47-2 ex. A at line 7). In fact, Dubarry does not contest the deficiency but states she "did not and does not have the money to pay the IRS" and has been "unable [not refused] to pay those deficiencies" (doc. 71 p. 9-10) (brackets in original).

United States also presented the Tax Court decision entered February 10, 2000, in which Dubarry stipulated to owing the deficiency and interest thereon, and waived her statutory right to prevent additional assessments and collection of the deficiency (doc. 47-2 ex. B.). The officer's declaration stated that pursuant to the stipulated decision, the Secretary assessed taxes and interest totaling $278,549 on March 24, 2000 (doc. 47-2 ¶ 6). This assessment is further supported by the IRS Account Transcript (doc. 47-2 ex. A at lines 13-14) and the January 19, 2005, Notice of Federal Tax Lien (doc. 47-2 ex. D).[3]

United States also attached the original and re-filed Notice of Federal Tax Lien, both filed in the county of the subject property, identifying Dubarry as the taxpayer, and listing the amount of the unpaid balance of assessment (doc. 47-2 ex. D). This filing of January 19, 2005, established the lien as junior only to BOA's 2004 mortgage, but United States and the defendants entered into a stipulation changing (albeit slightly) the parties' priority (doc. 43). It states that the proceeds of a judicial sale "should be applied first to reimburse the United States for the costs of such sale, and second to satisfy the mortgage in favor of BOA,"leaving the remainder to be distributed as the court determines (doc. 43 ¶ 2).[4] The court should honor this stipulation.

Finally, the record shows United States commenced this action on November 10, 2009, which is within ten years of the assessment of March 24, 2000 (doc. 1). The court need not address the tolling of the statute of limitations during Dubarry's bankruptcy proceedings.

## B. Dubarry did not Present Sufficient Evidence of Triable Issue of Fact

To rebut United States' motion, the defendants must show "significant, probative evidence" of a triable issue of fact. *Four Parcels of Real Property*, 941 F.2d at 1438. Dubarry contends there are several "material" facts that preclude summary

---

[3]  *See supra* note 2 (the total owed according to the re-filed notice was $557.75 less than the original notice, but this error does not defeat either filing).

[4]  IRS officer Sands' Form 4585(CG) Minimum Bid Worksheet estimated the expenses of the sale to be $1,000 (doc. 71-1 ex. 3).

judgment. Dubarry's primary argument is that her age, unemployed status, and poor health create an issue of material fact because the court has equitable discretion (doc. 71 p. 4). These facts are not material as a matter of law. The Supreme Court has specifically held that it is improper for a court to preclude sale to protect the taxpayer's interest. *Four Parcels of Real Property*, 941 F.2d at 1438.

Dubarry's next argument is that the IRS valuation of the property is inflated, and a sale would recover "little if any monies" (doc. 71 pp. 5, 7). This is a bare assertion, unsupported by any evidence (doc. 71-1 ex. 5). The IRS determined and reported in its February 13, 2009, ICS History Transcript that it expected to recover approximately $73,000 after expenses (doc. 71-1 ex. 6).[5] It based its valuation of the subject property on MLS listings of comparable properties (doc. 71-1 ex. 6). To deny a judicial sale on the basis of expected proceeds, the court must establish to a judicial certainty that nothing would be gained from the sale, and it would therefore be an unproductive act. *United States v. Morrison*, 247 F.2d 285 (5th Cir. 1957). "[I]f the Federal tax lien is junior to undisputed prior liens which will exhaust the full value of the property, a decree of foreclosure would be neither appropriate nor effective." *United States v. Boyd*, 246 F.2d 477, 481 (5th Cir. 1957). Dubarry fails to offer any "significant, probative evidence" of a triable issue of fact. *Four Parcels of Real Property*, 941 F.2d at 1438. A dispute over the exact proceeds of the sale does not establish to a judicial certainty a zero gain from forced sale.

Dubarry uses the term "uneconomical levy" as support for her opposition to summary judgment (doc. 71 p. 5). Assumably, Dubarry is referencing 26 U.S.C. § 6332(f), which states:

> Uneconomical levy. No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of levy.

United States did not seek an administrative levy; it holds a valid lien. An

---

[5]  Dubarry incorrectly states that page 4 and page 20 are from different ICS History Transcripts; both transcripts are dated February 13, 2009 (doc. 71-1 exs. 5-6). Although page 20 states estimated proceeds of $90,434.10, this court cites the lower figure for Dubarry's benefit.

administrative levy does not require judicial intervention, nor does it determine the priority of creditors. *Amer. Trust v. Amer. Cmty. Mut. Ins. Co.*, 142 F.3d 920, 923 (6th Cir. 1998). It merely protects the Government's interest from diversion while claims are resolved. *Id.*; *see* 26 U.S.C. § 6331. In contrast, a lien requires United States to bring a court action for the determination of the interests of the parties and the United States. 26 U.S.C. § 7403.

Third, Dubarry states she "has been unable [not refused] to pay the assessment (doc. 71 p. 9) (brackets in original). Both United States and this court do not doubt that Dubarry is insolvent, as it is clearly evidenced by her 2006 discharge in bankruptcy (47-4 ex. J). However, while the bankruptcy discharged Dubarry's personal liability, the lien against the subject property is not dischargeable. *Johnson*, 501 U.S. at 84, 111 S. Ct. at 2154; *see also In re Turner*, 182 B.R. 317, 333 (Bankr. N.D. Ala. 1995)("[I]f taxes have been assessed, the IRS has a lien on unencumbered property. The event of bankruptcy does not effect this maxim.") As a matter of law, Dubarry's inability to pay in money-form is an immaterial fact because United States can recoup the assessment from the subject property.

C. Becnel has no Security Interest in the Subject Property as a Matter of Law

Becnel has the same burden as Dubarry to show "significant, probative evidence" of a triable issue of fact as a co-defendant responding in opposition to United States' motion for summary judgment,. *Four Parcels of Real Property*, 941 F.2d at 1438. Becnel's arguments sound in fraud, claimed first against Dubarry alone in Becnel's answer and again against Dubarry and BOA in Becnel's response to the motion for summary judgment (docs. 35 p. 4-5; 53 p. 3).

The undisputed facts are that Becnel purchased the subject property in 2002 and deeded his ownership interest in it to Dubarry in 2004 (docs. 1 ¶ 6; 35 ¶ 6, p. 4; 47-2 ex. E-G). The undisputed evidence shows Becnel and Dubarry entered into a mortgage from lender BOA, which was recorded September 24, 2004 (doc. 47-2 ex. H). Moreover, the August 2004 quit-claim deed is clearly signed by Becnel (doc. 47-2 exh. F). The relevant portion states:

First Party [Becnel], for and in consideration of the sum of $10.00 in

hand paid by the said Second Party [Dubarry], the receipt whereof is hereby acknowledged, does hereby remise, release, and quit-claim unto the Second Party, all right, title, interest, and claim which the First Party has in and to the [subject property]. . .to have and hold the same. . .of all interest, equity and claim whatsoever the First Party may have, either in law or equity. . .for the proper use, benefit and behalf of the Second Party forever.

Doc. 47-2 exh. F.  The subsequently executed corrective warranty deed is further evidence that Becnel knowingly relinquished his interest in the property (doc. 47-2 exh. G).  Becnel's assertion that he was "defrauded into having his name removed from the title to the property" is unsupported and does not rebut the clear evidence that Becnel willingly gave up his property interest in 2004 (*see* doc. 53 p. 6 ¶ 4). Therefore, this claim does not raise an issue of material fact precluding summary judgment.

Becnel also argues he has a protected security interest in the subject property because he made the down payment and is also a co-mortgagor making payments (doc. 53 p. 3-4). This argument fails as a matter of law.  A security interest does not arise until "the property is in existence *and the interest has become protected under local law* against a subsequent judgment lien arising out of an unsecured obligation. . .," and the interest holder has parted with something of worth.  26 U.S.C. § 6323(h)(1) (emphasis added).  Under Florida Law, an interest is not protected until it is properly recorded so as to give subsequent creditors notice of it. § 695.01, Fla. Stat. (2010).  The Eleventh Circuit has noted that "[t]he filing [by the United States] is critical:  even a holder of a security interest who has actual knowledge of an unfiled tax lien will prevail over the government."  *In re Haas*, 31 F.3d 1081, 1084 (11th Cir. 1994)(Alabama mortgagor had an equitable right of redemption–a valuable property interest–but the federal tax lien took priority over his unperfected lien).

Becnel has not offered any evidence that he recorded his purported interest, nor does the record reveal any.  In essence, failure to record leads to the legal nonexistence of a security interest, and the unrecorded lien is junior to all perfected liens.  *See* 26 U.S.C. §§ 6323(h)(1), (4).  As applied, Becnel has not raised an issue of material fact precluding summary judgment.

## D. The Bertanis Failed to Respond to the Motion

A party has twenty-one days to respond to a motion for summary judgment. N.D. Fla. Loc. R. 56.1(B).  If the party fails to respond to another party's assertion, in whole or in part, this court may consider the assertion undisputed for purposes of summary judgment.  Fed. R. Civ. P. 56(e)(2).

The Bertanis have not responded to United States' motion for summary judgment.  In fact, the Bertanis admit they know little about the facts of this dispute and rely on Dubarry's judgment, as she is their lifelong friend (doc. 19).  Due to their failure to respond, this court should find that the Bertanis do not dispute the United States' facts for purposes of its motion for summary judgment.  United States asserts its lien is superior to the Bertanis mortgage note because the Bertanis did not record the instrument until May 2006, over a year after United States filed the Notice of Federal Tax Lien.  As the Bertanis do not dispute this fact, their security interest, which arose in 2006, is junior to United States' tax lien.  *See* 26 U.S.C. § 6323(h)(1), (4); § 695.01, Fla. Stat. (2010)(interest in property is good against creditors or subsequent purchasers when recorded).

## E.  Conclusion

United States has presented credible evidence that it holds a valid tax lien against the subject property, and that its lien is superior to interests other than BOA's.  *See* 26 U.S.C. §§ 6321 (tax lien), 6323 (priority of liens), 7403 (action to enforce lien).  This court should order enforcement of the federal tax lien and sale of the subject property to pay the tax, in accordance with 26 U.S.C. § 7403.

### 1.  Priority of Creditors

By federal statute and corresponding Florida law regarding recording, the priority of the liens would be as follows:

1) Bank of America, NA

2) United States of America

3) Fred and Loraine Bertani

4) Other creditors in the order of their perfected liens against the subject property

*See* 26 U.S.C. 6323; §695.01, Fla. Stat. (2010).  However, the parties entered into a stipulation that allowed United States to recover the costs of the sale prior to

applying the proceeds to Bank of America's first-priority lien (doc. 43). The IRS estimates the sale will cost $1,000 (doc. 71-1 ex. 3). The court should honor this stipulation and order the first $1000 of proceeds to pay United States' costs.

The remainder of the proceeds should be paid first to BOA to satisfy the mortgage, second to United States to satisfy the unpaid balance of assessment, third to satisfy the Bertani's properly recorded mortgage note, and fourth to any remaining properly recorded interests in the chronological order of recordation.

## 2. Distribution Amount

United States has presented three different amounts as the unpaid balance of Dubarry's liability. The memorandum of law accompanying United States' motion for summary judgment and the INST computation both list $573,187 as the amount of the lien as of September 13, 2010, the date it filed the motion (docs. 47 p. 2; 47-2 ex. C). The Declaration of Catherine Sands supports this figure and states:

> Taking into account all appropriate credits, payments and abatements, there is an unpaid balance of $573,187, as of September 13, 2010, on account of Dubarry's 1994 federal income tax liability, *plus further interest and statutory additions thereon as allowed by law.*

Doc. 47-2 ¶ 9 (emphasis added). In contrast, the February 13, 2009 ICS History Transcript specifically states that "[t]he total liability due is frozen as of 09/11/2006, the date of the bankruptcy discharge:. . .$462,722.55[.]" (doc. 71-1 ex. 5). Finally, the Notice of Federal Tax Lien, re-filed on June 30, 2009 lists the unpaid balance as $277,991.64, which is substantially the same amount as the 2005 Notice (doc. 47-2 ex. D).

The court cannot determine the proper distribution amounts with outdated and conflicting information. The conflicting amounts do not affect granting the motion for summary judgment as to liability, but they do affect the court's ability to determine the proper lien value, which amount may affect junior lienholders. Therefore, upon the court's acceptance of this recommendation, BOA should submit documentation of the payoff amount as of the date of the court's order. United States should be ordered to submit documentation of the current unpaid balance, including computation methods and citation to supporting authority.

## DuBarry's Motion for Summary Judgment

DuBarry filed two motions for summary judgment on December 7, 2010, and January 5, 2010 (docs. 58, 69). The court denied the January 5th motion for failing to comply with local rules, but the original motion that was properly filed is pending. In light of this recommendation to grant United States' motion for summary judgment and foreclose the tax lien, DuBarry's motion for summary judgment should be denied as without merit.

Based on the foregoing, it is respectfully RECOMMENDED that:

1. Plaintiff United States of America's motion for summary judgment (doc. 47) be GRANTED as to its right to foreclose its lien and sell the subject property.

2. Defendant Deonne DuBarry's motion for summary judgment (doc. 58) be DENIED.

3. Defendant Bank of America, NA be ordered to submit documentation of the payoff amount as of the date of the court's acceptance of this recommendation.

4. United States be ordered to submit documentation of the current unpaid balance of the lien, including computation methods and citation to supporting authority.

5. Distribution of the proceeds of the foreclosure sale will be determined after the parties comply with paragraphs three (3) and four (4).

At Pensacola, Florida, this 4th day of March, 2011.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES
Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties.

**Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**